UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HATTIE BROWN, individually and as the co-guardian of Plaintiff EUGENE BROWN, an incapacitated adult; TROY BROWN, as co-guardian,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>MT. GRANT GENERAL HOSPITAL; JUANCHICHOS T. VENTURA, M.D.; DANIEL A. WILLIAMS, JR., M.D.,<br><br>　　　　Defendants. | 3:12-CV-00461-LRH-WGC<br><br>ORDER |

　　　　This is a 42 U.S.C. § 1983 dispute. Before the court is defendants' Mineral County Hospital District (d.b.a. Mt. Grant General Hospital), Juanchichos T. Ventura, M.D., and Daniel A. Williams, Jr., M.D.'s ("Defendants'") Motion to Dismiss (#25[1]). Plaintiffs Hattie Brown, Eugene Brown, and Troy Brown ("the Browns") have responded (#30), and Defendants have replied (#37).

**I.　Factual and Procedural Background**

　　　　This action stems from the alleged mistreatment of Eugene Brown while he was in the care of Mt. Grant General Hospital ("Mt. Grant") and physicians Ventura and Williams. Eugene is an incapacitated adult under the guardianship of his wife Hattie and his son Troy. (First Amended Complaint ("FAC") #1-2, ¶¶ 1-3.) On March 8, 2011, Eugene was admitted to Mt. Grant for

---

[1] Refers to the court's docket number.

treatment of various medical problems, including pneumonia. (*Id*. at ¶ 14.) Eugene was hospitalized for this treatment until May 19. (*Id*. at ¶ 16.)

During this period, and while under the care of Drs. Ventura and Williams, Eugene developed decubitus ulcers–also known as bedsores. (*Id*. at ¶ 17.) Sometime around April 9, Ventura or Williams contacted another facility for a "wound care consultation,"[2] and this facility recommended that Eugene be transferred for surgical attention. (*Id*. at ¶ 19.) However, Defendants continued to treat the bedsores themselves, and the transfer did not occur until May 20, resulting in more severe bedsores and subsequent infection. (*Id*. at ¶ 22.)

The Browns have lodged section 1983 claims against Defendants for violations of Eugene's substantive due process rights under the Fourteenth Amendment.[3] These claims allege that Defendants had a special relationship with Eugene and that Defendants had a duty to protect Eugene from a danger they created. The Browns also allege a state law claim for negligence. Defendants removed this action from Nevada state court on August 28, 2012 (#1). They filed their Answer on September 26, 2012 (#22), and they filed the instant Motion to Dismiss on October 2.

**II.   Legal Standard**

The court must first determine the proper treatment of Defendants' motion to dismiss. Under Federal Rule of Civil Procedure 12(b), a motion to dismiss for failure to state a claim (the grounds of Defendants' motion) "must be made before pleading if a responsive pleading is allowed." Since Defendants filed their motion to dismiss following their answer–a responsive pleading, Fed. R. Civ. P. 7–the Motion to Dismiss is untimely.

---

[2] This facility was not Renown Regional Medical Center, as alleged in the FAC. (Browns' Response #30, p. 3, ¶ 3.)

[3] In their response, the Browns suggest that "newly discovered, additional facts" prove that Defendants discriminated against Eugene on the basis of age and race. (Browns' Response #30 at p. 5.) The opposition to a motion to dismiss is not the proper place to assert an additional claim. Therefore, the court ignores this claim.

2

However, the court may treat Defendants' motion as a motion for judgment on the pleadings or as a motion for summary judgment. First, courts may treat a post-answer Rule 12(b)(6) motion as a motion for judgment on the pleadings. *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954-55 (9th Cir. 2004) (citing Rules 12(h) and 12(c)). Second, the Browns have included new evidence in their opposition to the motion to dismiss. (Browns' Response #30 at Ex. 1.) Under Rule 12(d), the court may consider this extrinsic evidence if it treats the motion to dismiss as one for summary judgment under Rule 56. Here, the court treats Defendants' motion to dismiss as a motion for judgment on the pleadings under Rule 12(c). As discussed below, the main issues governing the motion to dismiss are legal (not factual), and therefore a Rule 12(c) judgment is appropriate.

The standard for a motion for judgment on the pleadings under Rule 12(c) is nearly identical to the standard under Rule 12(b)(6). *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). In particular, assuming all factual allegations in the complaint are true and construing them in the light most favorable to the non-moving party, the court must determine if the movant is entitled to judgement as a matter of law. *Id*. Judgment on the pleadings is inappropriate if the complaint raises "issues of fact, which, if proved, would [support] recovery." *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

**III.   Discussion**

At its heart, a section 1983 claim is composed of two pieces: that a right secured by the Constitution or federal law is violated and that it is violated by a person acting under color of state law. *See Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987). Here, it is undisputed that Defendants were acting under color of state law. Therefore, the question is whether Defendants deprived Eugene of a constitutional or federal right. The court finds they did not.

The Browns allege a failure to protect Eugene's substantive due process rights under the Fourteenth Amendment. Such rights include "the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 372 (1994). However, "the state's failure to protect that [right] does not violate the

3

Fourteenth Amendment, unless one of two exceptions applies: (1) the special relationship exception, or (2) the state-created danger exception." *Campbell v. State of Washington Department of Social & Health Services*, 671 F.3d 837, 842 (9th Cir. 2011) (citing *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 (1989)).

In order for the "special relationship exception" to apply, the state must "take[] a person into its custody and hold[] him there against his will." *DeShaney*, 489 U.S. at 199-200. The rationale behind this exception is that the state has rendered the individual unable to care for himself, and therefore the state bears responsibility for the individual's "safety and well-being." *Id*. at 200. "In the special relationship situation, the state's affirmative duty to protect arises from the limitation the state has imposed on the person's freedom to act for himself; the duty does *not* arise from the State's knowledge of the individual's predicament." *Campbell*, 671 F.3d at 843 (quotation marks and citation omitted). "Mere custody" will not support a special relationship claim. *Id*.

Here, the Browns have not alleged a relationship with the state beyond "mere custody." For instance, the Browns have not alleged a custodial relationship amounting to incarceration or involuntary commitment in a psychiatric facility, situations that have given rise to section 1983 liability. *Id*. The restraints on Eugene's liberty–his illness and his incapacity–were not created by the "State's affirmative act[s]." *DeShaney*, 489 U.S. at 199. *See also Campbell, 671 F.3d at* 844 (holding that the plaintiff's "cognitive impairments" did not transform a voluntary custodial relationship into an involuntary one). Thus, the Browns have not alleged any "duty-triggering affirmative acts" taken by the state against Eugene's will. *Campbell*, 671 F.3d at 844-45. There is accordingly no special relationship giving rise to section 1983 liability.

Under the "state-created danger" exception, a state actor may be liable where it "creates or exposes an individual to a danger which he or she would not have otherwise faced." *Id*. at 945 (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006)). The awareness of a risk of harm is insufficient to trigger the state's duty to protect. *DeShaney*, 489 U.S. at 200 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or

from its expressions of intent to help him.") In many cases, courts determine if the state created a duty-triggering danger by measuring the situation against one in which the state did not act at all. *See, e.g., id*. at 201 ("[The state] placed [the plaintiff] in no worse position than that in which he would have been had it not acted at all."); *see also Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007) (holding that the defendant "did not place [the plaintiffs] in any worse position than they would have been in" had the defendant not acted "whatsoever").

Here, the Browns have not sufficiently alleged a state-created danger. Instead, they claim that Defendants did not act fast enough, or with enough professional ability. But, as measured against a world in which the Defendants did not act at all, Eugene is not in a worse position. *Compare Campbell*, 671 F.3d at 847 (collecting cases in which the Ninth Circuit recognized a state-created danger). Eugene's injuries were "caused by the dangers inherent in [his] own physical and mental limitations." *Id*. Defendants' efforts to remedy Eugene's injuries, even if insufficient, "do not render them responsible for creating the danger to which [he unfortunately succumbed]." *Id*.

### IV.   Conclusion

What befell Eugene may have been avoidable, perhaps even wrong. But it was not a violation of his constitutional rights. *See DeShaney*, 489 U.S. at 202 ("[T]he Due Process Clause... does not transform every tort committed by a state actor into a constitutional violation.") Since the Browns cannot maintain a section 1983 claim against Defendants, there are no claims lodged in the complaint over which this court has original jurisdiction. The court therefore declines to exercise supplemental jurisdiction over the Browns' state law claim. 28 U.S.C. § 1367(c).

Finally, the Browns ask for an opportunity to amend their complaint. Because the court treats the instant motion as a motion for judgment on the pleadings under Rule 12(c), the right to amend as a matter of course under Rule 15(a) is inapplicable. And there is no "circuit-level authority regarding the standard for reviewing a Fed. R. Civ. P. 12(c) motion when the non-moving party requests leave to amend in response." *Ring v. Reichert*, 2007 WL 4358301 (W.D. Wash. Dec.

10, 2007). Despite this lacuna, courts have generally allowed amendment under the liberal standards of the Federal Rules. *See id.*; *see also Carmen v. San Francisco Unified School District*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997) ("Courts have discretion to grant leave to amend in conjunction with 12(c) motions, and may dismiss causes of action rather than grant judgment."). Therefore, the Browns will be granted leave to amend.[4]

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (#25) is GRANTED. The First Amended Complaint (#1-2) is DISMISSED without prejudice.

IT IS FURTHER ORDERED that the Browns shall file their amended complaint within fifteen (15) days from the issuance of this order.

IT IS SO ORDERED.

DATED this 7th day of January, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[4] Defendants insist amendment is futile, and therefore leave to amend should be denied. Futility is a high bar, and it is not met here. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.").